## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHEALE A. GORMAN<br>1483 Meetinghouse Road<br>Warminster, PA 18974<br><br>vs.<br><br>WARWICK TOWNSHIP<br>1733 Township Greene<br>Jamison, PA 18929<br>    and<br>OFFICER EDWARD LOUX<br>WARWICK TOWNSHIP POLICE DEPARTMENT<br>1733 Township Greene<br>Jamison, PA 18929<br>    and<br>CORPORAL AARON M. RICHWINE<br>WARWICK TOWNSHIP POLICE DEPARTMENT<br>1733 Township Greene<br>Jamison, PA 18929<br>    and<br>OFFICER BARRY J. SZAMBOTI<br>WARWICK TOWNSHIP POLICE DEPARTMENT<br>1733 Township Greene<br>Jamison, PA 18929 | CIVIL ACTION - LAW<br><br><br><br><br><br><br><br>NO.<br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Micheale A. Gorman, by and through her counsel, Craig A. Sopin, Esquire, brings this suit to recover for federal constitutional violations, federal statutory violations, and state law claims as follows:

### JURISDICTION AND VENUE

1. Jurisdiction in this Court is asserted under the provisions of 28 U.S.C. Section 1331 and Section 1343. This action arises under the provisions of the Civil Rights Act of 1866, as amended 42 U.S.C. Section 1983. This Court has supplemental jurisdiction over the state claims asserted herein pursuant to 28 U.S.C. Section 1367.

2. Venue is appropriately laid in this Court pursuant to 28 U.S.C. Section 1391(b) in that the actions complained of took place in Warwick Township, Bucks County, which is within the bounds of the Eastern District, and Defendants carry on business within the Eastern District.

**PARTIES**

3. Plaintiff, Micheale A. Gorman (hereinafter "Gorman"), is an adult individual domiciled and resident at 1483 Meetinghouse Road, Warminster, PA 18974.

4. Defendant, Warwick Township (hereinafter "Warwick"), is a Municipality in Bucks County, Pennsylvania and owns, operates, manages, directs and controls the Warwick Township Police Department which employs the defendant police officers named as parties herein.

5. At all times relevant hereto, Warwick acted through its employee police officers as indicated below.

6. Defendant, Officer Edward Loux (hereinafter "Loux"), was at all times relevant hereto a police officer with the Warwick Township Police Department in Warwick Township.

7. Defendant, Corporal Aaron M. Richwine (hereinafter "Richwine"), was at all times relevant hereto a police officer in a supervisory capacity with the Warwick Township Police Department in Warwick Township.

8. Defendant, Officer Barry J. Szamboti (hereinafter "Szamboti"), was at all times relevant hereto a police officer with the Warwick Township Police Department in Warwick Township.

9. Defendant, Officer William Hueber (hereinafter "Hueber"), was at all times relevant hereto a police officer with the Warwick Township Police Department in Warwick Township.

10. Loux, Richwine, Szamboti and Hueber are sued in their respective individual and official capacities and at all times relevant hereto were acting under the color of their respective official capacity and their acts were performed under the color of the statues and ordinances of the Township of Warwick, County of Bucks and Commonwealth of Pennsylvania.

## FACTUAL ALLEGATIONS ON THE MERITS

11. On November 19, 2008, at approximately 9:30 P.M., Gorman was the subject of a vehicle stop under suspicion of driving under the influence of alcohol or controlled substance (DUI).

12. Following her performance on field sobriety tests, Gorman was handcuffed behind her back by Hueber and Richwine.

13. While Gorman was attempting to enter the police vehicle in the manner in which she was instructed, Loux stepped in and suddenly administered a Taser stun to Gorman's right hip area while her back was towards him which dropped her almost to the ground but for the fact that her limp body became supported by the side of the patrol car.

14. After Gorman had been Tasered and became limp and unresponsive, Loux continued to administer multiple Taser stuns to Gorman's body resulting in multiple Taser wounds as well as other physical and psychological injuries to Gorman.

15. During the course of the repeated Taser stuns by Loux, Gorman recalls having heard an unidentified female police officer

pleading with Loux to discontinue stunning her, but to no avail.

16. Gorman, who already suffered from a cardiac condition, was transported by Warwick Township Police Officers to the Doylestown Hospital Emergency Room for medical treatment as a result of the multiple Taser stuns, wounds, shock and resulting conditions.

17. The aforesaid incident occurred while Gorman was handcuffed behind her back; while she was in a non-threatening and defenseless physical position, unarmed, and completely unable to pose any threat to others, to resist their actions or to defend herself.

18. Even if Gorman had been able to resist entering the police car while handcuffed behind her back, and even assuming that the police officers on the scene were unable to escort her into the police vehicle by less intrusive and harmful means, the first Taser stun already had rendered Gorman limp and unresponsive and there would have been no need to continue to deliver Taser stuns thereafter.

19. At no time during the aforesaid incident did the defendants take any action to stop or attempt to stop the assault and battery on Gorman, or to otherwise take control of the situation. It was the unidentified female police officer, believed to be from another jurisdiction, who, alone, pleaded with Loux to discontinue the assault to no avail.

20. Immediately following the assault and battery by Loux, as aforesaid, Gorman experienced pain, fear, shock, cardiac palpitations and a feeling of malaise.

21. Defendants intentionally used excessive force against Gorman, which was unreasonable, unjustifiable, and unconstitutional.

22. At all times relevant hereto, defendants knew or should have known that their actions were in violation of Gorman's Fourth and Fourteenth Amendment Rights.

23. Defendants' actions, and their motivation for their actions, were conscience-shocking, without conscious regard or due care for Gorman or the foreseeable consequences of their actions, and with such wanton and reckless disregard of the consequences as to show Defendants' deliberate indifference to the danger of harm and injury.

24. As a direct and proximate cause of Defendants' actions and inactions, Gorman suffered and continues to suffer deprivation of her rights, fear, horror, loss of liberty, to her great detriment and loss.

25. As a direct and proximate cause of Defendants' actions and inactions, Gorman suffered and was made to undergo physical pain and horrible mental anguish, all to her great detriment, financial detriment, and personal loss.

26. Gorman's serious injuries were a foreseeable and direct result of the actions and inactions of all Defendants, and will continue indefinitely into the future.

27. Defendants violated Gorman's clearly established and well settled federal constitutional rights, including but not limited to her right to substantive due process, liberty, personal security, and her right to be free from the use of excessive, unreasonable

and unjustified force. Indeed, defendants' actions as aforesaid constituted an intentional assault and battery against Gorman intended to serve no legitimate purpose.

28. Furthermore, the Constitutional violations suffered by Gorman were the result of Warwick's policies, procedures, customs, and practices of allowing its officers to use unreasonable and excessive force thereby violating the civil rights of those with whom they come into contact.

29. Warwick has maintained, with the deliberate indifference to the impact on citizens, an inadequate system of review of instances of misconduct, abuse of police powers or violation of citizens' rights by police officers, which system has failed to identify instances of abuse of police powers or violations of citizens' rights by police officers, or to discipline, more closely supervise, or retain officers who abuse their police powers or violate citizens' rights, including the police officers named as parties herein. This was particularly evidenced by the fact that defendant Richwine was acting in a supervisory capacity.

30. Warwick was deliberately indifferent to the need for more or different training rules, regulations, investigations and discipline relating to police officers' use of excessive force and investigatory stops as set forth above.

31. The foregoing acts, omissions, systemic deficiencies, practices, customs and deliberate indifference constitute the policies, practices and customs of Warwick and have caused police officers of Warwick, including the police officers named as parties herein, to violate the constitutional rights of citizens, including

Gorman.

32. The rights, violations and injuries suffered by Gorman were a foreseeable result of the policies, practices, customs and deliberate indifference of Warwick.

### COUNT I - FOURTH AMENDMENT-EXCESSIVE FORCE
### PLAINTIFF VS. ALL DEFENDANTS

33. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

34. As a direct and proximate result of defendants' actions, more particularly described above, plaintiff's rights protected under the Fourth Amendment to be free from the use of excessive force were violated and she suffered injury as a result.

35. Defendants subjected plaintiff to these deprivations of rights unreasonably, intentionally, wantonly, outrageously, and with conscious and reckless disregard for whether plaintiff's rights would be violated by their actions.

36. As a direct and proximate result of the acts and omissions of defendants, plaintiff suffered damages as set forth above and deprivations of her rights and liberty interest, all to plaintiff's great detriment and loss.

37. Solely as a result of defendants' conduct, plaintiff suffered substantial damages, including the costs of this suit.

38. Plaintiff is entitled to attorney's fees and costs of prosecution of this suit pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiff, Micheale A. Gorman, requests that the court find and determine, after trial by jury as appropriate, that plaintiff suffered substantial and continuing injury as a result of deprivation of her civil and Constitutional rights, and otherwise

wrongful conduct and award the following relief, as appropriate:

i) a declaration that defendants, jointly and severally, have violated plaintiff's civil rights;

ii) compensatory damages in excess of $150,000;

iii) prejudgment interest, attorney's fees and costs;

iv) punitive damages against the individual defendants in their individual capacities; and

v) such other legal and equitable relief as the court deems just and proper.

### COUNT II - FOURTEENTH AMENDMENT - SUBSTANTITIVE DUE PROCESS
### PLAINTIFF VS. ALL DEFENDANTS

39. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

40. As a direct and proximate result of defendants' actions, more particularly described above, plaintiff's substantive due process rights protected under the Fourteenth Amendment were violated and she suffered grievous bodily injury.

41. Defendants subjected plaintiff to this deprivation of rights unreasonably, intentionally, wantonly, outrageously, and with conscious and reckless disregard for whether plaintiffs' rights would be violated by their actions.

42. As a direct and proximate result of the acts and omissions of defendants, plaintiff suffered damages as set forth above and deprivations of her rights and liberty interest, all to plaintiff's great detriment and loss.

43. Solely as a result of defendants' conduct, plaintiff suffered substantial damages, including the costs of this suit.

44. Plaintiff is entitled to attorney's fees and cost of

prosecution of this suit pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiff, Micheale A. Gorman, requests that the court find and determine, after trial by jury as appropriate, that plaintiff suffered substantial and continuing injury as a result of deprivation of her civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i) a declaration that defendants, jointly and severally, have violated plaintiff's civil rights;

ii) compensatory damages in excess of $150,000;

iii) prejudgment interest, attorney's fees and costs;

iv) punitive damages against the individual defendants in their individual capacities; and

v) such other legal and equitable relief as the court deems just and proper.

### COUNT III - FOURTEENTH AMENDMENT - PROCEDURAL DUE PROCESS
### PLAINTIFF VS. ALL DEFENDANTS

45. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

46. As a direct and proximate result of defendants' actions, more particularly described above, plaintiff's procedural due process rights protected under the Fourteenth Amendment were violated and she suffered grievous bodily injury.

47. Defendants subjected plaintiff to this deprivation of rights unreasonably, intentionally, wantonly, outrageously, and with conscious and reckless disregard for whether plaintiffs' rights would be violated by their actions.

48. As a direct and proximate result of the acts and omissions of defendants, plaintiff suffered damages as set forth

above and deprivations of her rights and liberty interest, all to plaintiff's great detriment and loss.

49. Solely as a result of defendants' conduct, plaintiff suffered substantial damages, including the costs of this suit.

50. Plaintiff is entitled to attorney's fees and cost of prosecution of this suit pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiff, Micheale A. Gorman, requests that the court find and determine, after trial by jury as appropriate, that plaintiff suffered substantial and continuing injury as a result of deprivation of her civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i) a declaration that defendants, jointly and severally, have violated plaintiff's civil rights;

ii) compensatory damages in excess of $150,000;

iii) prejudgment interest, attorney's fees and costs;

iv) punitive damages against the individual defendants in their individual capacities; and

v) such other legal and equitable relief as the court deems just and proper.

## COUNT IV - <u>MONELL</u> CLAIM
### PLAINTIFF VS. DEFENDANT WARWICK TOWNSHIP

51. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

52. The decisions and actions of the officials of Warwick as set forth herein represented and constituted the official policy and/or customs of Warwick.

53. At the time of this incident, it was the policy, practice and/or custom of Warwick and its police officers to use excessive force and intimidate citizens.

54. In addition, the Constitutional violations suffered by plaintiff were the result of Warwick's failure to properly train and supervise its officers with regard to the proper methods for making stops without intimidating citizens and wrongfully using excessive and unreasonable force, etc.

55. Prior to the events described herein, Warwick developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the constitutional rights of persons involved with Warwick, which policies are more particularly set forth in the preceding paragraphs incorporated herein, that caused the violation of plaintiffs' rights.

56. As a direct and proximate result of Warwick's policies, practices, customs, procedures, failure to train and supervise, which are more specifically described above, plaintiff was injured as stated herein.

57. As a direct and proximate result of, or by virtue of an affirmative link or casual nexus thereto, the aforesaid acts, omissions, deliberate indifference, systemic deficiencies,

policies, practices and customs of Warwick, as more fully described above, Warwick violated plaintiff's right under the laws and Constitution of the United States, in particular the Fourth and Fourteenth Amendments.

58. Plaintiff is entitled to attorney's fees and cost of prosecution of this suit pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiff, Micheale A. Gorman, requests that the court find and determine, after trial by jury as appropriate, that plaintiff suffered substantial and continuing injury as a result of deprivation of her civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i) a declaration that defendants, jointly and severally, have violated plaintiff's civil rights;

ii) compensatory damages in excess of $150,000;

iii) prejudgment interest, attorney's fees and costs;

iv) punitive damages against the individual defendants in their individual capacities; and

v) such other legal and equitable relief as the court deems just and proper.

## COUNT V - ASSAULT AND BATTERY
## PLAINTIFF VS. DEFENDANT, OFFICER EDWARD LOUX

59. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

60. Defendant placed plaintiff in fear of imminent, unpermitted, unprivileged, offensive bodily contact and did, in fact, subject her to such bodily contact.

61. As a consequence of these actions, plaintiff suffered bodily injury.

62. The acts of defendant, Loux, as set forth above, constituted the torts of assault and battery, all to plaintiff's great detriment and loss.

WHEREFORE, Plaintiff, Micheale A. Gorman, requests that the court find and determine, after trial by jury as appropriate, that plaintiff suffered substantial and continuing injury as a result of deprivation of her civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i) a declaration that defendants, jointly and severally, have violated plaintiff's civil rights;

ii) compensatory damages in excess of $150,000;

iii) prejudgment interest, attorney's fees and costs;

iv) punitive damages against the individual defendants in their individual capacities; and

v) such other legal and equitable relief as the court deems just and proper.

### COUNT VI - INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS
### PLAINTIFF VS. DEFENDANT, OFFICER EDWARD LOUX

63. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

64. Defendant, Loux, intentionally, recklessly, willfully, and without legal justification, by extreme and outrageous conduct caused severe emotional distress to plaintiff.

65. The acts of defendant, Loux alleged in the preceding paragraphs constitute the tort of intentional infliction of emotional distress, all to plaintiff's great detriment and loss.

WHEREFORE, Plaintiff, Micheale A. Gorman, requests that the court find and determine, after trial by jury as appropriate, that

plaintiff suffered substantial and continuing injury as a result of deprivation of her civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i) a declaration that defendants, jointly and severally, have violated plaintiff's civil rights;

ii) compensatory damages in excess of $150,000;

iii) prejudgment interest, attorney's fees and costs;

iv) punitive damages against the individual defendants in their individual capacities; and

v) such other legal and equitable relief as the court deems just and proper.

### COUNT VII - MISREPRESENTATION AND DECEIT
### PLAINTIFF VS. DEFENDANTS,
### CORPORAL AARON M. RICHWINE AND WARWICK TOWNSHIP

66. The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

67. Following the aforesaid incident, defendant Warwick, through its designated officer, defendant Richwine, prepared a narrative police report (Affidavit of Probable Cause) ("Police Report") a copy of which, partially redacted for privacy, is attached hereto as Exhibit A.

68. The aforesaid Police Report wrongfully suggested that Gorman was required to be Tasered in the first instance and that only a single Taser stun was delivered to her.

69. The Police Report, in implying that Gorman was required to be Tasered and that only a single Taser stun was delivered to her was false, misleading, inaccurate and was intended to be so by Warwick and Richwine so as to cover up the true nature of what

actually occurred to their own benefit and in deprivation of Gorman's right to have a fair, unbiased and accurate report of the incident placed on file.

70. The attestation by Richwine before a Magisterial District Judge that the facts contained in the Police Report were actually false, and constituted false swearing, for the reasons set forth above.

71. The aforesaid actions of Warwick and Richwine were biased and egregious, done in the utmost bad faith and in deprivation of Gorman's rights, Warwick and Richwine should, therefore, be punished not only for their actions herein but to ensure fair and unbiased investigations in reporting involving its own officers and personnel in the future.

WHEREFORE, Plaintiff, Micheale A. Gorman, requests that the court find and determine, after trial by jury as appropriate, that plaintiff suffered substantial and continuing injury as a result of deprivation of her civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i) a declaration that defendants, jointly and severally, have violated plaintiff's civil rights;

ii) compensatory damages in excess of $150,000;

iii) prejudgment interest, attorney's fees and costs;

iv) punitive damages against the individual defendants in their individual capacities; and

v) such other legal and equitable relief as the court deems just and proper.

**JURY DEMAND**

PURSUANT TO F.R.C.P. 38, A JURY TRIAL IS DEMANDED.

CRAIG A. SOPIN, ESQUIRE
Attorney for Plaintiff
Identification No. 49587
601 Walnut Street
The Curtis Center, Suite 160-W
Philadelphia, PA  19106
(215) 928-0300

| Defendant Name: | First: Michaele | Middle: | Last: Gorman |
|---|---|---|---|

# AFFIDAVIT of PROBABLE CAUSE

On November 19, 2008 at about 2131 hours, Chris Smith called BCR to report a light colored station wagon crossing the double yellow line on Bristol Road and driving on the wrong side of the roadway. Smith provided the registration on the station wagon – PA           He followed the station wagon from Bristol Road and Guinea Lane, to Eddowes Road.

I was in the area when the call was dispatched. I drove south on Meetinghouse Road, and then southeast on Eddowes Road. I observed a light colored station wagon driving out of the Eddowes Road industrial complex. The station wagon drove northwest on Eddowes Road. As it passed my police car, I noted that it was bearing PA registration         I turned around and got behind the car – a Volkswagen Passatt wagon.

I immediately noticed that the Passatt was not driving on the right portion of Eddowes Road. Rather, it was using the center portion of the roadway. As it got closer to Meetinghouse Road, the Passatt was traveling on the left side of the roadway. The Passatt slowly crawled up to the stop sign at Meetinghouse Road. The driver used a left turn signal. After a long pause, the vehicle turned onto southbound Meetinghouse Road. I continued to follow. The Passatt used the center of the roadway. After a few seconds, the Passatt was on the left side of the roadway again. I advised BCR that I would be stopping the Passatt in 1500 block of Meetinghouse (later found to be the 1600 block). I activated my emergency lights. The Passatt slowly responded and slowly moved to the side of Meetinghouse Road and stopped. It was occupied by only the driver.

I approached on the driver's side of the Passatt. The driver had her window up. When I arrived at the side of the driver's door, she lowered the window. I told the driver that the stop was being audio and video recorded. I asked her if everything was ok, and added that she looked lost. The driver told me that she was being followed. I explained that the person following her had reported that she was driving poorly. I asked the driver for her license. She presented a PA photo driver's license identifying her as Michaele Gorman. There was an odor in Gorman's car, but I could not determine if it was alcohol or not. I asked Gorman how many alcoholic drinks she had consumed. I suggested that it may have been one or two. Gorman told me that she had consumed a little less than one drink.

I asked Gorman to submit to a PBT. She refused, and threatened to drive away from the traffic stop. I was able to convince Gorman to step to the rear of her vehicle. She still refused the PBT. At the back of the car, I now detected an unmistakable odor of alcoholic beverages coming from Gorman's person. I asked Gorman to complete a series of field sobriety tests. Gorman was unable to complete the test satisfactorily. I again asked Gorman if she wished to take the PBT. She still refused. She began to argue about her performance on the balance tests. After many requests, she was still refusing the PBT, and she was becoming more and more argumentative. I advised her that she was under arrest. I obtained my handcuffs, and walked behind Gorman. I grasped her arms. Gorman pulled both of her arms forward, and would not be handcuffed. She demanded to know which tests she failed. I told Gorman not to resist. She was still pulling her arms forward. Officer Loux approached. I told Gorman that Loux had a Taser. I told her that he would use the Taser if she continued resisting. Loux pointed the Taser at the ground and "sparked" the Taser. Gorman told me that she didn't care. I told her that she would not want to be Tasered. Gorman told me that she had been Tasered before, and she didn't care. Officer Hueber and I were able to force her arms behind her back and we placed handcuffs on Gorman.

I asked Gorman to sit in the back of Officer Szamboti's car police car. She stated, "I'm not getting in the car." I told Gorman that she needed to get in the car or she would be Tasered. She stated, "Taser me." I told Gorman that she did not want to be Tasered. She again said, "Taser me." She was resisting my efforts to place her in the car. I backed off of Gorman and removed my Taser from the holster. I took the probe cartridge off of the Taser, and was prepared to use it.

Page 4 of 5

| Defendant Name: | First: Michaele | Middle: | Last: Gorman |
|---|---|---|---|

Just as I was about to activate the Taser, Officer Loux stepped in and administered a drive-stun to Gorman's left thigh. She backed away from the Taser and sat in the car.

Officer Szamboti and I transported Gorman to Doylestown Hospital. Once we arrived at the hospital, Officer Szamboti advised Gorman of PA Implied Consent by reading directly from the Penndot form. Gorman began to argue about the incident again, and questioned what field tests she failed. I had to remind Gorman several times that we needed a "yes" or "no" answer regarding the blood test. She eventually stated that she would not take the blood test.

At Gorman's request, we brought her into the ER for medical treatment. While in the ER, Gorman changed her mind and decided to submit to the blood test. At 2250 hours, two gray top tubes of blood were drawn from Gorman's right arm by RN Melly.

An inventory search of Gorman' car was conducted prior to towing. During the search, Gorman's purse was found in the car. It was brought back to HQ for safe keeping. I conducted an inventory search of the purse. During that search, I found three Darvocet pills labeled "M" and "1772". Darvocet is a Schedule IV controlled substance. There is no evidence that Gorman has a prescription for the pills. They were located in a metal make-up container.

Results of the blood test pending lab analysis.

I, Cpl. Aaron M. Richwine #29, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

(Signature of Affiant)

Sworn to me and subscribed before me this 24 day of Nov 2008

Date _____, Magisterial District Judge

My commission expires first Monday of January, 2012

2008 NOV 24 P 2:45
DISTRICT COURT
07-3-02
RECEIVED

SEAL