## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHEALE A. GORMAN          : CIVIL ACTION
                            :
    vs.                    :
                            : NO. 10-CV-6760
WARWICK TOWNSHIP,           :
OFFICER EDWARD LOUX,        :
CORPORAL AARON M. RICHWINE  :
and OFFICER BARRY J. SZAMBOTI :


### MEMORANDUM AND ORDER

**JOYNER, J.**                                    **March 31, 2011**


    This civil rights action has been brought before the Court
on Partial Motion of Defendants to Dismiss Plaintiff's Complaint
Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 4).  For the
following reasons, we shall grant the motion in part.

### Factual Background

    As alleged in the Complaint, Plaintiff Micheale Gorman was
stopped by the defendant Warwick Township police officers on
November 19, 2008 at approximately 9:30 p.m. on suspicion of
driving while under the influence of alcohol or controlled
substance.  (Complaint, ¶11).  Following Plaintiff's apparent
failure of field sobriety tests, she was placed under arrest and
handcuffed behind her back by Defendant Corporal Richwine and
Officer William Hueber, both of the Warwick Township Police
Department.  Once handcuffed and while in the process of
entering the police cruiser "in the manner in which she was

instructed," Plaintiff avers that Defendant Loux "stepped in and suddenly administered a Taser stun to [her] right hip area while her back was towards him which dropped her almost to the ground but for the fact that her limp body became supported by the side of the patrol car." (Complaint, ¶13). Plaintiff further contends that Defendant Loux "continued to administer multiple Taser stuns" to her body "resulting in multiple Taser wounds as well as other physical and psychological injuries..." (Complaint, ¶14). Plaintiff, "who already suffered from a cardiac condition," was then transported by unidentified Warwick Township police officers to the Doylestown Hospital Emergency Room for medical treatment "as a result of the multiple Taser stuns, wounds, shock and resulting conditions." (Complaint, ¶16).

Two years after this incident, on November 18, 2010, Ms. Gorman brought this suit seeking relief under the Fourth and Fourteenth Amendments and under Pennsylvania common law for assault and battery, intentional infliction of emotional distress and misrepresentation and deceit. By the motion which is now before us, the various Defendants seek to dismiss all and/or part of the claims against them.

## Standards for Ruling on Rule 12(b)(6) Motions

It is axiomatic that a motion under Fed. R. Civ. P. 12(b)(6) seeks dismissal of a pleading due to "failure to state a claim

upon which relief may be granted."  In order to survive a Rule 12(b)(6) motion, a pleading must set forth "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007); <u>Holmes v. Gates</u>, 2010 U.S. App. LEXIS 25489 at *3 (3d Cir. Dec. 10, 2010).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); <u>Santiago v. Warminster Township</u>, 629 F.3d 121, 126 (3d Cir. 2010).  The law is well-settled that in considering and ruling upon motions to dismiss, the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 262, n. 27 (3d Cir. 2010); <u>Krantz v. Prudential Investments Fund Management</u>, 305 F.3d 140, 142 (3d Cir. 2002).  In addition to the complaint itself, the court can review documents attached thereto as well as matters of public record.  A court may also take judicial notice of a prior judicial opinion.  <u>McTernan v. City of York, PA</u>, 577 F.3d 521, 526 (3d Cir. 2009); <u>Buck v. Hampton Township School District</u>, 452 F.3d 256, 260 (3d Cir. 2006).  Now when presented with a motion to dismiss, district courts should conduct a two part analysis.  First, the factual

and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Iqbal, 129 S. Ct. at 1949).  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. (citing Iqbal 129 S. Ct. at 1950).  In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.

## Discussion

### A.  Failure to State a Claim Against Officers Hueber and Szamboti

Defendants first assert that inasmuch as Plaintiff has failed to plead any action by Officer Hueber or Officer Szamboti that would subject either of them to liability, the complaint fails to state a claim upon which relief may be granted and both officers are properly dismissed from this suit.

According to the opening paragraphs of the complaint, "[t]his action arises under the provisions of the Civil Rights Act of 1866, as amended, 42 U.S.C. Section 1983."  (Complaint, ¶1).  Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws; it does not, by its own terms, create substantive rights.  Kaucher v. County of

4

Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(citing Baker v. McCollan, 443 U.S. 137, 145, n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). Entitled "Civil action for deprivation of rights," §1983 reads as follows in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. ...

Thus by the plain terms of §1983, two - and only two - allegations are required in order to state a cause of action under that statute. Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923, 64 L. Ed. 2d 572, 577 (1980). First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprived him of that right acted under color of state or territorial law. Id.; Anspach v. City of Philadelphia, 503 F.3d 256, 261 (3d Cir. 2007).

"[T]he first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"

5

Kaucher, supra,(quoting County of Sacramento v. Lewis, 523 U.S. 833, 841, n.5, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) and Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). Further, "[b]ecause vicarious liability is inapplicable to ... §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. It is particularly noteworthy that a number of circuit courts, including the Third Circuit, have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Id, (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986; in accord, Putnam v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972)). Stated otherwise, where an officer "knew of and acquiesced in the treatment received ... at the hands of other officers," liability may be imposed. See, Baker v. Monroe Township, 50 F.3d 1186, 1193 (3d Cir. 1995); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

In employing these principles to evaluate the complaint in this matter, we note that the only allegations against Officer Szamboti are that he "was at all times relevant hereto a police officer with the Warwick Township Police Department in Warwick Township," that he, along with Officers Loux, Richwine and Hueber, is being sued in his individual and official capacity, and was

> "at all times relevant hereto" acting "under the color of
> their respective official capacity and their acts were
> performed under the color of the statues (sic) and
> ordinances of the Township of Warwick, County of Bucks and
> Commonwealth of Pennsylvania."

(Complaint, ¶s 8, 10). Although the complaint also avers that the "defendants intentionally used excessive force against Gorman," and failed to "take any action to stop or attempt to stop the assault and battery on Gorman or to otherwise take control of the situation," we cannot discern whether Officer Szamboti was present at the scene of Plaintiff's vehicle stop, what actions, if any, he took relative to the plaintiff, or when and/or where he acted or failed to act. In short, we have no idea what Officer Szamboti did or how he could conceivably be held liable to Plaintiff. As a consequence, we find that these very generalized allegations fail to show that Plaintiff has a plausible claim entitling her to relief against Officer Szamboti.

We reach the same conclusion with respect to Officer Hueber. For one, it appears that the only averment concerning Officer

Hueber is that "[f]ollowing her performance on field sobriety tests, Gorman was handcuffed behind her back by Hueber and Richwine." (Complaint, ¶12). Plaintiff does not challenge the propriety of having been so handcuffed and does not allege that she sustained any injury as a result of her handcuffing. Thus, the complaint fails to plead a plausible claim to relief against Officer Hueber as a result of his handcuffing and/or assisting in Plaintiff's handcuffing. Nevertheless, because Officer Hueber is alleged to have been at the scene of the vehicle stop, he is therefore evidently also charged with failing to prevent Officer Loux from improperly Tasering Plaintiff. Officer Hueber, however, is *not* identified as a defendant in the caption of the complaint, it does not appear as though a summons was issued for him or that service was ever accepted on his behalf. We therefore conclude that Officer Hueber is not, at least as of this juncture, a party to this action. Accordingly, while we shall grant the motion for dismissal against Officers Hueber and Szamboti, we shall give Plaintiff the opportunity to file and properly serve an amended pleading as to them, should she determine that the facts warrant such action.

    *B. Dismissal of Plaintiff's Fourteenth Amendment Claims*

    Defendants next move to dismiss Counts II and III in their entirety on two grounds: (1) that the claims raised therein are barred by the Supreme Court's holding in Heck v. Humphrey, 512

U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); and (2) excessive force claims do not lie under the Fourteenth Amendment. We agree.

The holding of <u>Heck v. Humphrey</u> is clear: a plaintiff may not pursue a claim under §1983 that calls into question the validity of his conviction unless he demonstrates that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id</u>., 512 U.S. at 486-87, 114 S. Ct. at 2372; <u>Bell v. Ehrlich</u>, 2011 U.S. App. LEXIS 3555 at *3-*4 (3d Cir. Feb. 23, 2011). <u>See also</u>, <u>Bush v. Philadelphia Police Department</u>, 387 Fed. Appx. 130, 132, 2010 U.S. App. LEXIS 14703 at *4 (July 19, 2010). Indeed, under <u>Heck</u>,

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983. Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487, 114 S. Ct. at 2372-2373 (emphasis in original).

Plaintiff captions Counts II and III of her Complaint as purporting to state claims for violations of substantive (Count

II) and procedural (Count III) due process in violation of the Fourteenth Amendment which violations ostensibly occurred "[a]s a direct and proximate result of defendants' actions, more particularly described above..." (Complaint, ¶s 40 and 46). Insofar as the "actions described above" appear to concern only the *manner* in which Plaintiff was arrested and not the *propriety* of her arrest, we do not believe Plaintiff is endeavoring to challenge the legitimacy of her arrest and conviction.[1]  However, in the event and to the extent that this *is* what Plaintiff is attempting to accomplish, her Fourteenth Amendment claims are obviously barred by <u>Heck</u> given that she apparently pled guilty to the charge for which she was arrested.

On the other hand, if our suspicions are correct that Plaintiff is merely endeavoring to challenge the amount of force used to effectuate her arrest under the Fourteenth Amendment, those claims are also barred.  On this point, the U.S. Supreme Court in <u>Graham v. Connor</u>, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) has decreed:

_____

[1] Plaintiff *seems* to be saying as much in her Brief in Support of her Response to Defendants' Partial Motion to Dismiss Complaint as she states that she "makes no claim in her complaint to recover damages for any unconstitutional conviction or imprisonment relating to her DUI arrest and conviction."  However, her arguments in opposition are less than clear given that she then goes on to conflate what appears to be her argument in opposition to the motion to dismiss Counts II and III with what appears to be an argument in opposition to Defendants' request to dismiss the <u>Monell</u> claim against the Township.  Plaintiff's Brief is silent with regard to Defendants' reliance on <u>Graham v. Connor</u>.

Today we make explicit what was implicit in <u>Garner</u>'s[2] analysis, and hold that *all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

490 U.S. at 395, 109 S. Ct. at 1871. *In accord*, <u>Albright v. Oliver</u>, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); <u>Brown v. Rinehart</u>, 325 Fed. Appx. 47, 50, n. 1, 2009 U.S. App. LEXIS 9539 at *7 (3d Cir. April 30, 2009); <u>Chatman v. City of Johnstown</u>, 131 Fed. Appx. 18, 20, 2005 U.S. App. LEXIS 8675, *6 - *7 (3d Cir. May 13, 2005); <u>Fagan v. City of Vineland</u>, 22 F.3d 1296, 1305, n. 5 (3d Cir. 1994).

Although less clear, it appears that this same rationale also holds true where a plaintiff is endeavoring to obtain relief for the use of allegedly excessive force during the course of an arrest under a Fourteenth Amendment procedural due process theory. <u>See</u>, <u>e.g.</u>, <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 269 (3d Cir. 2000)("... the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis.")(internal citations omitted); <u>Cook v. Upper Darby Township</u>, 2006 U.S. Dist. LEXIS 51485 at *3 - *4 (E.D. Pa.

---

[2] <u>Tennessee v. Garner</u>, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).

July 27, 2006)("We observe that Plaintiff's factual allegations do not appear to support a procedural due process claim.  Rather, they relate to his claims of arrest and detention without probable cause and excessive force.  As mentioned above, allegations like these normally 'fall under the exclusive province of the Fourth Amendment.'")(citing Johnson v. Knorr, 2005 U.S. Dist. LEXIS 28860 at *11 (E.D. Pa. Oct. 31, 2005)) Moyer v. Borough of North Wales, 2000 U.S. Dist. LEXIS 16082 at *9- *10 (E.D. Pa. Nov. 7, 2000)("Similarly, the procedural due process prong of the Fourteenth Amendment does not support a cause of action for false arrest." (citing Berg, supra.).  Indeed as a general proposition, "use of excessive force by a law enforcement officer is considered a 'seizure' under the Fourth Amendment, which prohibits such unlawful action."  Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004).  Thus, regardless of whether the due process claim is substantive or procedural in nature, we agree that an excessive force claim is properly pursued only under the Fourth Amendment.  For these reasons, Counts II and III shall be dismissed with prejudice from the Plaintiff's Complaint here.

C. *Motion to Dismiss Plaintiff's* Monell *Claim - Count IV*

Next, Defendants seek the dismissal of Count IV against Warwick Township for failure to plead a claim upon which relief may be granted under Monell v. Department of Social Services of

City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611

(1978).  Because we find that Count IV sufficiently pleads such a

cause of action, Defendants' motion to dismiss this count of the

complaint shall be denied.

The holding of Monell is simple:

> [A] municipality cannot be held liable *solely* because it
> employs a tort-feasor - or, in other words, a municipality
> cannot be held liable under §1983 on a *respondeat superior*
> theory. ...  Instead, it is when execution of a
> government's policy or custom, whether made by its lawmakers
> or by those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the
> government as an entity is responsible under §1983.

Monell, 436 U.S. at 691, 694, 98 S. Ct. at 2036, 2037-2038.  "The

first inquiry in any case alleging municipal liability under

§1983 is the question whether there is a direct causal link

between a municipal policy or custom and the alleged

constitutional deprivation."  City of Canton, Ohio v. Harris, 489

U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989).

There are two ways that a plaintiff can establish municipal

liability under §1983: policy or custom.  Watson v. Abington

Township, 478 F.3d 144, 155 (3d Cir. 2007).  Policy is made when

a "decisionmaker possessing final authority to establish

municipal policy with respect to a given action, issues an

official proclamation, policy or edict." Id. (quoting Pembaur v.

City of Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299, 89

L. Ed.2d 452 (1986) and Bielevicz v. Dubinon, 915 F.2d 845, 850

(3d Cir. 1990)).  Custom, on the other hand, can be proven "by

13

showing that a given course of conduct, although not specifically
endorsed or authorized by law is so well-settled and permanent as
virtually to constitute law." Watson, 478 F.3d at 155-156
(quoting Bielevicz, supra. and Andrews v. City of Philadelphia,
895 F.2d 1469, 1480 (3d Cir. 1990)). Hence, while proof of a
single incident of unconstitutional activity may not be
sufficient, in and of itself, to establish liability under
Monell, if a municipal entity can be shown to have tolerated
known misconduct by police officers in the past or that its
policymakers were aware of similar unlawful conduct in the past
but failed to take precautions against future violations *and* that
this failure at least in part caused the injury complained of, it
may be liable. See, City of Oklahoma City v. Tuttle, 471 U.S.
808, 105 S. Ct. 2427, 2436, 85 L. Ed.2d 791 (1985); Watson, 478
F.3d at 156; Bielevicz, 915 F.2d at 851.

In like fashion, inadequacy of police training may serve as
the basis for §1983 liability only where the failure to train
amounts to deliberate indifference to the rights of persons with
whom the police come into contact. City of Canton, 489 U.S. at
388, 109 S. Ct. at 1204. Indeed, if a [training] program does
not prevent constitutional violations, municipal decisionmakers
may eventually be put on notice that a new program is called for.
Board of County Commissioners of Bryan County v. Brown, 520 U.S.
397, 407, 117 S. Ct. 1382, 1390, 137 L. Ed.2d 626 (1997). In

that event, their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the "deliberate indifference" - necessary to trigger municipal liability.  Id., (citing City of Canton, 489 U.S. at 390, n. 10, 109 S. Ct. at 1205).

In application of the foregoing, Plaintiff's complaint does assert that "[a]t the time of this incident, it was the policy, practice and/or custom of Warwick and its police officers to use excessive force and intimidate citizens;" that "the Constitutional violations suffered by plaintiff were the result of Warwick's failure to properly train and supervise its officers with regard to the proper methods of making stops without intimidating citizens and wrongfully using excessive and unreasonable force, etc.;" and that "[a]s a direct and proximate result of Warwick's policies, practices, customs, procedures, failure to train and supervise, ... plaintiff was injured as stated herein."  (Complaint, ¶s 53, 54, 56).  While these averments are somewhat conclusory in nature, we nevertheless find that they are sufficient to withstand a Rule 12(b)(6) motion. Accordingly, Defendants' motion to dismiss Count IV is denied.

D.  *Dismissal of Plaintiff's Intentional Tort Claims*

In Counts V and VI, Plaintiff endeavors to plead causes of action under Pennsylvania state law for assault and battery and

intentional infliction of emotional distress against Officer
Edward Loux.  Count VII purports to raise a claim against
Corporal Richwine and Warwick Township for "misrepresentation and
deceit."  Because Defendants Loux and Richwine are ostensibly
being "sued in their respective individual and official
capacities," Defendants move for the dismissal of the official
capacity claims in Counts V, VI and VII.

A suit against a public official in his or her official
capacity "generally represents only another way of pleading an
action against an entity of which an officer is an agent."  Hafer
v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed.2d 301
(1991)(quoting Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct.
3099, 3104, 87 L. Ed.2d 114 (1985)); Betts v. New Castle Youth
Development Center, 621 F.3d 249, 254 (3d Cir. 2010).  Suits
against state officials in their official capacity therefore
should be treated as suits against the State.  Hafer, supra.
"Personal capacity suits, on the other hand, seek to impose
individual liability upon a government officer for actions taken
under color of state law."  Hafer, 502 U.S. at 25, 112 S. Ct. at
362.  "[T]o establish personal liability in a §1983 action, it is
enough to show that the official, acting under color of state
law, caused the deprivation of a federal right."  Id. (quoting
Graham, 473 U.S. at 166, 105 S. Ct. at 3105).  In other words,
state officers sued for damages in their official capacities are

16

not "persons" for purposes of the suit because they assume the identity of the government that employs them.  <u>Hafer</u>, 502 U.S. at 26, 112 S. Ct. at 362.  By contrast, officers sued in their personal capacities come to court as individuals and therefore fit comfortably within the statutory term "person," and may therefore assert personal immunity defenses such as objectively reasonable reliance on existing law.  <u>Id.</u>; <u>Will v. Michigan Dep't. of State Police</u>, 491 U.S. 58, 65, 71, 109 S. Ct. 2304, 2311, n.10, 105 L. Ed.2d 45 (1989); <u>Powell v. Ridge</u>, 189 F.3d 387, 401 (3d Cir. 1999).

In addition, the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C. S. §8541[3] ("PSTCA"), generally provides immunity from tort claims for local governmental bodies, agencies and their employees[4] under Pennsylvania law.  <u>Beard v. Borough of</u>

---

[3] 42 Pa. C. S. §8541 reads as follows:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

[4] Under the PSTCA, "employee" is defined to mean:

Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit.  Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

And, "local agency" is:

A government unit other than the Commonwealth government.  The term includes, but is not limited to, an intermediate unit; municipalities

Duncansville, 652 F. Supp. 2d 611, 626 (W.D. Pa. 2009). There are, of course, certain limited exceptions to this general rule. Under 42 Pa. C. S. §8542(a),

A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

Under this section then, a party seeking to recover against a local agency defendant must show that it has a common law or statutory cause of action in negligence against that defendant *and* that the local agency defendant's alleged negligent acts fall within one of the exceptions to governmental immunity listed in

cooperating in the exercise or performance of governmental functions, powers or responsibilities under 53 Pa. C. S. Ch. 23 Subch. A (relating to intergovernmental cooperation); and councils of government and other entities created by two or more municipalities under 53 Pa. C. S. Ch. 23 Subch. A.

42 Pa. C. S. §8501.

Section 8542(b)[5]. <u>Beard</u>, 652 F. Supp. 2d at 627; <u>Canty v. City of Philadelphia</u>, 99 F. Supp. 2d 576, 582 (E.D. Pa. 2000). In the absence of a legal duty owed to the injured party, there can be no recovery against a local governmental defendant. <u>Mascaro v. Youth Study Center</u>, 514 Pa. 351, 523 A.2d 1118, 1123 (1987). While "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties ... to the same extent as his employing local agency and subject to the same limitations imposed by [the Tort Claims Act]," that employee loses immunity where "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct..." 42 Pa. C. S. §§8545, 8550. "Willful misconduct 'is conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" <u>Pelzer v. City of Philadelphia</u>, 656 F. Supp. 2d 517, 539 (E.D. Pa. 2009)(quoting <u>Renk v. City of Pittsburgh</u>, 537 Pa. 68, 641 A.2d 289, 293 (1994)).

Instantly, in Counts V and VI, Plaintiff alleges that in

---

[5] Those exceptions are: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals.

Tasering her during the course of her arrest, Officer Loux committed the state law torts of assault and battery and intentional infliction of emotional distress. In Count VII, Plaintiff avers that Officer Richwine fraudulently drafted the Police Report in that he "wrongfully suggested that Gorman was required to be Tasered in the first instance and that only a single Taser stun was delivered..." Inasmuch as Ms. Gorman has thus alleged willful misconduct against Officers Loux and Richwine, she has failed to plead a cause of action which falls within one of the eight enumerated exceptions to the Political Subdivision Tort Claims Act such as is required to proceed against a local governmental agency such as Warwick Township or its employees acting in the course and scope of their employment. Likewise lacking from the complaint are any allegations that the township *itself* caused the harm suffered by the plaintiff and it therefore appears that Plaintiff is in fact endeavoring to hold it liable for its employees' alleged actions solely on the basis of *respondeat superior*. We therefore are compelled to dismiss these state law claims insofar as they, by implication, invoke the defendants' official capacities and/or seek to impose liability under theories that do not sound in negligence. Counts V, VI and VII[6] shall thus stand **only** with respect to Officers

---

[6] Defendants also seek the dismissal of Count VII on the basis of <u>Heck v. Humphrey</u>, <u>supra</u>. and for failure to plead the elements necessary to state a viable claim. We first find that, reading the complaint as a whole, sufficient facts are averred to adequately state a claim for fraud.

Loux and Richwine as individual tortfeasors.

*F. Entitlement to Qualified Immunity*

Alternatively, Defendants assert that this action should be dismissed for the reason that they are qualifiedly immune from suit.

The purpose of qualified immunity is to shield "government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1697, 143 L. Ed. 2d 818 (1999)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); Hill v. Borough of Kutztown, 455 F.3d 225, 244 (3d Cir. 2006). Given that qualified immunity is "an immunity from suit rather than a mere defense to liability that is effectively lost if a case is erroneously permitted to go to trial," it is important to resolve "immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed.2d

_____

Even if such claim were viable, defendants alternatively assert that to allow the claim to proceed would effectively invalidate Plaintiff's guilty plea in violation of the Supreme Court's ruling in Heck. Given that in Count VII, Plaintiff is complaining that Corporal Richwine purportedly falsified the need to Taser her and the number of Taser stuns that she received, it is clear that the gravamen of this count of the complaint is the *manner* and amount of force used to arrest Plaintiff and not the *propriety* of the arrest. Accordingly, we find no violation of Heck.

589 (1991) and <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)).

In resolving government officials' qualified immunity claims, it is helpful to first decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. <u>Pearson</u>, 129 S. Ct. at 815-816 (modifying <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed.2d 272 (2001)). Then, "if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." <u>Id</u>., citing <u>Id</u>. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." <u>Id</u>., citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987).

In this case, the plaintiff has sufficiently alleged a potential violation of her constitutional right to be free from an unreasonable seizure under the Fourth Amendment and insofar as the law has long held that the use of excessive force to effectuate an arrest is unlawful, it is self-evident that the conduct alleged violated a clearly established constitutional right. Thus, while the use of a Taser in the course of an arrest may be a discretionary decision on the part of an individual officer that is dependent on the circumstances then and there being presented, a reasonable law enforcement officer should know

that excessive uses of Taser stuns to effectuate an arrest would constitute a Fourth Amendment violation.  In the absence of a clear record of what actually occurred in the course of Plaintiff's arrest, we must deny the request for dismissal on the basis of qualified immunity at this time.

*G. Punitive Damages*

Finally, Defendants seek to have the plaintiff's claims for punitive damages contained in her *ad damnum* clauses stricken for failure to state claims on which relief may legally be granted.

The law is clear that a municipality is immune from punitive damages under §1983.  <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed.2d 616 (1981); <u>Smith v. Borough of Dunmore</u>, 2011 U.S. App. LEXIS 1461 at *19-20 (3d Cir. Jan. 25, 2011); <u>Potence v. Hazleton Area School District</u>, 357 F.3d 366, 372 (3d Cir. 2004).  Moreover, for a plaintiff to qualify for the recovery of punitive damages in a Section 1983 action at all, the defendant's conduct must be, at a minimum, reckless or callous.  <u>Savarese v. Agriss</u>, 883 F.2d 1194, 1204 (3d Cir. 1989).  The only defendant whose alleged conduct could conceivably be said to rise to this level of culpability is Officer Loux.  Accordingly, we dismiss all of the punitive damages claims against all of the defendants in this matter save for those against Defendant Loux.

For all of the reasons outlined in the preceding pages, the

Defendants' Motion to Dismiss shall be granted in part and denied in part.  An order follows.