**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHEALE A. GORMAN | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 10-CV-6760 |
| WARWICK TOWNSHIP, OFFICER EDWARD LOUX, CORPORAL AARON M. RICHWINE and OFFICER BARRY J. SZAMBOTI | : | |

**MEMORANDUM AND ORDER**

**JOYNER, J.** **April 23, 2012**

This civil rights action is once again before the Court for adjudication of the Defendants' Motion for Summary Judgment. For the reasons outlined in the paragraphs which follow, the Motion shall be GRANTED.

**History of the Case**[1]

This case has its origins in a vehicle stop which occurred at approximately 9:30 p.m. on November 19, 2008 in the 1600 block of Meetinghouse Road in Warwick Township, Bucks County, Pennsylvania. Immediately prior to that time, Bucks County Police Radio ("BCR") had received a call from an area motorist that there was a light-colored station wagon crossing over the double yellow line and driving on the wrong side of the road on nearby Bristol Road. In addition to providing this information,

[1] Nearly all of the facts recited herein have been gleaned from the video record of Plaintiff's traffic stop captured by the on-board cameras in Warwick Cars 6 and 11 and from the audio-taped recordings from Cpl. Richwine's microphone.

the motorist also supplied BCR with the license plate number of the car, which he had followed from Bristol Road to Eddowes Road.

Corporal Aaron Richwine of the Warwick Township Police Department was on patrol in the area when he received the BCR transmission. A few minutes later, he saw a light colored wagon pulling out of an industrial complex on Eddowes Road. Noting that the license tag matched that given by the motorist, Cpl. Richwine followed the vehicle and, and after observing it first using the center portion of the roadway and then driving on the left side of the road, he activated the lights on his police vehicle and pulled it over. (Affidavit of Probable Cause, p. 4, annexed as Exhibit "M" to Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment; Deposition of Cpl. Aaron Richwine, dated 10/6/11, at pp. 15-16).

Cpl. Richwine approached the driver's side of the stopped car and found it to contain a single occupant - the driver, Plaintiff, Micheale Gorman. Richwine informed Ms. Gorman that the stop was being audio and video recorded and asked whether she was lost. Plaintiff responded that she was driving the way that she was because she had just hit a deer the preceding week and totaled her car. In response to Cpl. Richwine's question as to how many alcoholic drinks she had, Plaintiff replied that she had "probably, not even one." After checking her license and registration, Richwine then asked Plaintiff to submit to a

preliminary breath test ("PBT") as he wanted to be sure that she was safe to continue driving.[2] Plaintiff refused to take the PBT ostensibly because she had been told that they aren't accurate and said that since her house was just up the road, she would just walk home. Cpl. Richwine told Plaintiff that she was not free to leave and that if she wouldn't take the PBT, she would have to perform field sobriety tests.

Cpl. Richwine then demonstrated the three sobriety tests which he wanted Plaintiff to perform: the closed eyes balance, one-leg stand and the heel to toe walking tests. While she was able to perform the one-leg standing test, she swayed while performing the closed eyes balance test and stumbled when she started the heel to toe test and ended up walking normally (not heel-to-toe) for most of it. Cpl. Richwine gave Plaintiff another opportunity to take the PBT, advising her that he would be placing her under arrest for Driving Under the Influence ("DUI") but that if the PBT came back with a .08 reading or lower, he would not arrest her. The other officers also told Plaintiff that the PBT could only help her, it could not hurt her given that it was only preliminary, it was not admissible in court and they could not testify to its results. Plaintiff again refused and Cpl. Richwine advised her that he was placing her

[2] By this time, two other police cruisers containing Officer Hueber and Officers Loux and Szamboti had arrived at the scene.

under arrest.

It was at this point that Plaintiff became what can only be described as uncooperative. She stiffened her arms in front of her body, refusing to put them behind her back. After asking the other officers if anyone had a taser, Cpl. Richwine told Plaintiff to put her hands behind her back or she would be tased. Officer Loux removed his taser from his holster and demonstrably "sparked" it. Although Ms. Gorman said that she wasn't afraid of being tased, she did comply and was handcuffed behind her back. Because all of the officers at the scene were men, Cpl. Richwine asked whether there were any female officers on duty that night. One of the other officers told him that Warminster Township Officer Renee Fox was working and Richwine instructed that she be called to conduct a search of the plaintiff's person. At that point, Richwine told Plaintiff that he would be walking her back to Officer Loux and Officer Szamboti's vehicle while they waited for Officer Fox to arrive. Plaintiff became argumentative, telling Cpl. Richwine to let go of her arm, "he was bruising" her. When one of the other officers told her that they couldn't let go of her because she was handcuffed, Ms. Gorman responded that she "didn't care," that she was not "gonna relax...this is why you people have a bad reputation," that "this is a false arrest," and asking the police if they "want to have some charges pressed against you?"

Subsequently, when the officers asked her to sit in the back of the police vehicle, Plaintiff refused.[3]  Cpl. Richwine told her "Ma'am, you're going to get tasered if you don't get in the car."  Plaintiff responded "go ahead and taser me."  Richwine again told Plaintiff to get in the car and Plaintiff again said "taser me."  After the third entreaty to get in the car, Richwine told her that she did not want to get tasered to which Plaintiff responded that she had been tasered before and it didn't bother her.  Although the following events are not seen on the video, they are recorded on the audio and attested to in the depositions of the parties.  Cpl. Richwine reached for his taser, but before he could use it, Officer Loux stepped forward and delivered a "drive stun" which lasted approximately 4 seconds to the rear portion of Plaintiff's left thigh.[4]  (Gorman Dep., 68-69; Richwine Dep., 51-59; Loux Dep., 16-21).  Plaintiff immediately became compliant and stepped into the back seat of the police car.  (Richwine Dep., 63-65; Loux Dep., 21-22).[5]  A few minutes later,

---

[3]  By Plaintiff's own admission, she remembers "... being very upset and very argumentative ..." and "... I mean, I was not getting into the car. So if you consider not doing what they asked me to do as resistance, then I have to go with yes on that one."  (Dep. of Micheale Gorman 10/6/11, p. 64, 66, 67).

[4]  Plaintiff disputes that she was tasered in the thigh.  Rather, she asserts that Officer Loux tasered her first in the right rear pelvic region and then again a few seconds later about "an inch or inch and a half lower" "in the same general region."  (Gorman Dep., p.72)

[5]  Plaintiff also alleges that she was tasered three times by Officer Loux and that after the second tase, she went down to her knee and was helped back up from the rear.  At that point, Plaintiff avers that she "turned around again, and said something like, 'stop,' or 'let me go' or something like that,

Officer Fox arrived and performed a pat-down search of Plaintiff, following which Plaintiff was transported to the Doylestown Hospital, where she was examined and blood was drawn for testing. Ms. Gorman was released from police custody at the hospital. (Richwine Dep., 72-73, Affidavit of Renee Fox, attached to Defendants' Memorandum of Law in Support of Motion for Summary Judgment as Exhibit "H"; Exhibit "I"). Plaintiff subsequently pled guilty to driving under the influence of alcohol as a result of this incident. (Exhibit "I").

On November 18, 2010, Plaintiff brought this suit against Warwick Township, Corporal Richwine, Officer Loux and Officer Szamboti in both their official and individual capacities alleging violations of her constitutional rights under the Fourth and Fourteenth Amendments and for the common law torts of intentional infliction of emotional distress, assault and battery and misrepresentation. After partially granting the defendants' motion to dismiss, Plaintiff filed a Second Amended Complaint against Warwick Township, Richwine and Loux seeking redress under the Fourth Amendment for excessive force, and for assault and battery, intentional infliction of emotional distress and misrepresentation. Discovery in this matter has since closed and Defendants filed this motion for summary judgment on December 7,

and then" she was "tased a third time." (Gorman Dep., 74). This time, she was tased towards her waist line, but not above it. (Gorman Dep., 75).

2011.

**Standards Governing Rule 56 Summary Judgment Motions**

The principles and procedures for resolving motions for summary judgment are outlined in Fed. R. Civ. P. 56, which dictates that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

In considering a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 171 (3d Cir. 2008); Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 126 (3d Cir. 1994); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); U.S. v. Kensington Hospital, 760 F. Supp. 1120 (E.D.Pa. 1991). It should be noted that an issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

Further, "[t]he mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." Renchenski v. Williams, 622 F.3d 315, 324 (3d Cir. 2010)(quoting Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009)). And, if the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998). Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).[6]

**Discussion**

A. Defendant's Entitlement to Summary Judgment on

[6] In Scott, the plaintiff was rendered a quadriplegic after the defendant, a Georgia county deputy, bumped his car off the road following a 10-mile-long high speed chase. In addressing the plaintiff-respondent's Fourth Amendment excessive force claim, the Supreme Court's factual findings were informed by the videotaped recording of the events from the on-board video camera in Petitioner's police vehicle. Reversing the Eleventh Circuit's affirmance of the District Court's denial of the petitioner-deputy's motion for summary judgment, the Supreme Court opined that because the videotape "quite clearly contradicts the version of the story told by respondent," the Court of Appeals erred in relying on and adopting the respondent-plaintiff's "visibl[y] fictional" version of the facts. Instead, the Court of Appeals "should have viewed the facts in the light depicted by the videotape." Scott, supra.

Plaintiff's Excessive Force Claim - Count I

By this motion, Defendants first move for the entry of judgment in their favor as a matter of law on Count I of the Plaintiff's Second Amended Complaint which seeks damages from Corporal Richwine and Officer Loux for the use of excessive force in the course of her November 19, 2008 arrest.

As we previously discussed in our Memorandum and Order of March 31, 2011 partially granting Defendants' Motion to Dismiss, "[w]here ... [an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). Thus, "[t]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Estate of Smith v. Marasco, 430 F.3d 140, 148 (3d Cir. 2005)(quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999)). It is of course axiomatic that "an officer seizes a person whenever he 'restrains the freedom of a person to walk away.'" Curley v. Klem, 499 F. 3d 199, 203, n.4 (3d Cir. 2007)(quoting Tennessee v. Garner, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).

In analyzing such claims, courts must be mindful that "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," though "the test of reasonableness ... is not capable of precise definition or mechanical application." Graham, 490 U.S. at 396, 109 S. Ct. at 1872 (citing Terry v. Ohio, 392 U.S. 1, 22-27, 88 S. Ct. 1868, 1880-1883, 20 L. Ed. 2d 889 (1968) and quoting Bell v. Wolfish, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L. Ed. 2d 447 (1979)). Rather, the "Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." Graham, 490 U.S. at 399, 109 S. Ct. at 1873. Indeed, if a use of force is objectively reasonable, an officer's good faith is irrelevant and any bad faith motivation on his part is immaterial. Kopec v. Tate, 361 F. 3d 772, 776 (3d Cir. 2004).

Furthermore, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396, 109 S. Ct. at 1871 (quoting Garner, 471 U.S. at 8, 105 S. Ct. at 1699)). Factors to be considered include the

severity of the crime at issue, whether the suspect posed an immediate threat to public safety, and whether the suspect was actively resisting or evading arrest.  Woods v. Grant, No. 09-4360, 381 Fed. Appx. 144, 146, 2010 U.S. App. LEXIS 10448 (3d Cir. May 21, 2010)(citing Graham, 490 U.S. at 396; Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004)).  Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, the possibility that the suspect may be armed, whether the action takes place in the context of effecting an arrest, and the number of persons with whom the police officers must contend at one time.  Ansell v. Ross Township, No. 10-1402, 419 Fed. Appx. 209, 213, 2011 U.S. App. LEXIS 6202 (3d Cir. March 25, 2011); Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).  Through it all, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are often tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation."  Bornstad v. Honey Brook Township, No. 05-4534, 211 Fed. Appx. 118, 124, 2007 U.S. App. LEXIS 218 (3d Cir. Jan. 5, 2007)(quoting Graham, 490 U.S. at 396-397)).  "Significantly, the Supreme Court has cautioned that in applying the objective reasonableness test, 'not every push or shove, even if it may later seem unnecessary

in the peace of a judge's chambers,' is constitutionally unreasonable." Sharrar, 128 F.3d at 821 (quoting Graham, 490 U.S. at 396, 109 S. Ct. at 1872).

In applying these precepts to the circumstances surrounding the arrest of the plaintiff in the instant case and weighing both the Graham and the Sharrar factors[7], we find that the defendant officers' use of force here was objectively reasonable. Indeed, the record demonstrates that although the plaintiff was initially compliant with Cpl. Richwine's verbal directives to step out of the car and perform field sobriety tests, she became increasingly oppositional after she was told that she was being placed under arrest. It was only in response to Plaintiff's stiffening of her arms and refusing to place them behind her back, that Officer Loux first sparked his taser. This promptly resulted in Plaintiff's co-operating and being handcuffed. Regrettably, however, Plaintiff's uncooperative behavior resumed as she was being walked back to Officer Loux and Szamboti's police vehicle and worsened when she was asked to step into the back of the car. It was only after repeated entreaties and warnings by the

[7] Although the crime at issue was not "severe" and there is no evidence that Plaintiff was armed or dangerous or that she posed any serious threat to the safety of the four officers who responded, by her own admission, she was actively resisting arrest and would have evaded arrest by walking across the road to her nearby home. The audiotaped recording also reflects that Ms. Gorman became more and more verbally hostile and combative after she learned that she was being placed under arrest and the officers attempted to place her in the back of the police car. Officer Loux characterized her behavior as "being resistive but not assaultive." (Loux Dep., 19-20).

officers and Plaintiff's continued verbal and physical refusals[8] to comply, that Officer Loux stepped forward and delivered two quick "drive stuns" to the back of plaintiff's thigh. These quick stuns had the desired result and Ms. Gorman immediately stepped into the back of the cruiser. There is no evidence of any additional force[9] being applied to Plaintiff nor evidence of any injury. Indeed, we find that the force that was applied in this case was employed for the sole purpose of placing Plaintiff into the police car[10] and was, we find, the minimal amount of force needed under the circumstances to accomplish this objective.[11] So finding[12], we conclude that judgment is therefore

---

[8] Plaintiff wouldn't move, "she was as stiff as can be. She stiffened herself up." (Richwine Dep., 52).

[9] We acknowledge that there is disagreement between Plaintiff and the defendants as to where on her body she was tased and the precise number of stuns administered and that as to these two issues, there is nothing other than the audiotaped recording of the event. There is also a discrepancy between Officer Loux's testimony that Plaintiff further resisted at one point by putting her foot on the rear sill of the passenger door and pushing off against that and Plaintiff's testimony that she fell to the ground on one knee. (Loux Dep., 17-18; Gorman Dep., 65-67). However, even accepting Ms. Gorman's testimony that she was tased three times in the area of her waist, the parties agree that the duration of the entire event was less than a minute in length and that, aside from the momentary sensation of pain that attended each tase, Plaintiff sustained no injury as a result. (Richwine Dep., 58-59; Gorman Dep., 76-79; Taser usage log for Taser #X00-338929, a copy of which is annexed to Defendants' Motion for Summary Judgment as Exhibit "I," at sequence numbers 0185, 0186).

[10] As Plaintiff herself testified,

> "The longer the time went on that they were trying to get me into the car, and I was not getting into the car, the more things got sort of heated." (Gorman Dep., 69).

[11] As Cpl. Richwine testified,

"I suppose I could have shoved her head down and stuffed her in the car...I didn't want to hurt her." (Richwine Dep., 51-52).

appropriately entered in favor of Defendants Loux and Richwine[13] on this issue as a matter of law and the motion for summary judgment on Count I of the Second Amended Complaint is granted.

---

Further, while the Warwick officers were also equipped with OC (oleoresin capsicum) spray, in response to plaintiff's counsel's questioning as to why he chose to employ the taser instead of the pepper spray, Officer Loux explained,

> "the aftereffects of pepper spray are abundant. It's a lot of decontamination and water in the eyes. The after effects are quite substantial as opposed to the Taser. As soon as the [taser] unit is deactivated, the effects of it cease."

(Loux Dep., 42-43).

[12] We likewise find that the force employed in arresting Ms. Gorman was in accord with Pennsylvania state law. Specifically, 18 Pa. C.S.A. §508 governing the use of force in law enforcement states the following at subsection (a)(1):

> (1) A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other persons, or when he believes both that:
>
> > (i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and
> >
> > (ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay.

[13] It is not clear from our reading of the Second Amended Complaint whether Plaintiff is also pursuing a claim against Cpl. Richwine for failing to intervene in what she contends was Officer Loux's improper tasering. Regardless, given our finding that the force used here was reasonable and that Plaintiff's constitutional rights were not violated by the use of that force, we likewise enter judgment in favor of Cpl. Richwine as a matter of law on this claim as well. See, Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011); Adams v. Selhorst, No. 11-1927, 449 Fed. Appx. 198, 204, 2011 U.S. App. LEXIS 21688 at *14 (3d Cir. Oct. 26, 2011); Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).

B. Warwick Township's Entitlement to Summary Judgment

In Count II of the Second Amended Complaint, Plaintiff raises a Monell claim against the Township of Warwick alleging that "[a]t the time of this incident, it was the policy, practice and/or custom of Warwick and its police force to use excessive force and intimidate citizens," and that "the Constitutional violations suffered by plaintiff were the result of Warwick's failure to properly train and supervise its officers with regard to the proper methods for making stops without intimidating citizens and wrongfully using excessive and unreasonable force, etc." (Second Amended Compl., ¶s 36, 38).

Under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), municipalities cannot be held liable under §1983 under respondeat superior or, in other words, solely because they employ a tort-feasor. Rather, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." Id., 436 U.S. at 691, 694, 98 S. Ct. at 2036, 2037-2038. And, while inadequacy of police training may serve as the basis for liability under §1983, it is only when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact, that liability

may be imposed. City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed.2d 412 (1989).

It is possible for a municipality to be held independently liable for a substantive due process violation even in situations where none of its employees are liable. Bornstad v. Honey Brook Township, No. 05-4534, 211 Fed. Appx. 118, 2007 U.S. App. Lexis 218 (3d Cir. Jan. 5, 2007); Brown v. Commissioner, Dep't. Of Health Emergency Medical Services Training Institute, 318 F.3d 473, 482 (3d Cir. 2003)(citing Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994)). However, for there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights. Brown, supra. Thus, it is not enough that a municipality adopted with deliberate indifference a policy of inadequately training its officers - there must be a "direct causal link" between the policy and a constitutional violation. Id, (citing Canton, 489 U.S. at 385).

Here, there is ample evidence in the record that Warwick Township has written policies and procedures governing the use of force by its officers, that the officers involved in the plaintiff's arrest had their state-required training as well as specific training in the use of tasers and that the township had policies and procedures regarding the preparation of reports when officers used force, including such weapons as tasers and o.c. or pepper spray. (Depositions of Cpl. Richwine and Officer Loux, at

pp. 31-43, 53-55, 60, 62-63, and 19-20, 22, 24-29, 32-35, 39-44, respectively; Defendants' Exhibits "F," "G," "I," "J," and "K"). Further, as discussed in detail above, the amount of force employed by the defendant officers in effectuating the plaintiff's arrest was not excessive and the defendants did not violate Plaintiff's Fourth Amendment rights. Thus, to the extent that there was any deficiency in the defendants' training and training policies and procedures, it was not "the moving force" behind a "constitutional violation actionable under §1983." McCracken v. Freed, No. 06-1510, 243 Fed. Appx. 702, 708, 2007 U.S. App. LEXIS 14646 at *13 (June 19, 2007)(citing Polk v. Dodson, 454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed.2d 509 (1981)). We therefore shall also grant the motion for summary judgment as to Count II of the Second Amended Complaint.

  C. Plaintiff's Common Law Claims for Assault and Battery, Intentional Infliction of Emotional Distress and Misrepresentation and Deceit against Officers Loux and Richwine Individually.

 Plaintiff's remaining three claims are against the individual officers under Pennsylvania state law. We shall address each claim in turn.

  1. Intentional Infliction of Emotional Distress

 We begin by observing that the Pennsylvania Supreme Court has, for at least the past twenty five years, repeatedly declined to expressly adopt the Restatement (Second) of Torts, §46 (1965), while at the same time holding that it sets forth the minimum

elements necessary to sustain a cause of action for intentional infliction of emotional distress and recognizing that Pennsylvania lower and federal courts have found it to be an accurate description of that tort in Pennsylvania. See, e.g., Taylor v. Albert Einstein Medical Center, 562 Pa. 176, 181, 754 A.2d 650, 652 (2000); Hoy v. Angelone, 554 Pa. 134, 151, n. 10, 720 A.2d 745, 754, n.10 (1998); Kazatsky v. King David Memorial Park, 515 Pa. 183, 184, 527 A.2d 988, 989 (1987). It thus appears that, for all intents and purposes, Pennsylvania recognizes the tort, as formulated by the foregoing section of the Restatement. Specifically, Section 46 states:

> 1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> > (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
> >
> > (b) to any other person who is present at the time, if such distress results in bodily harm.

And, as the drafters' commentary to the Section explains,

> ... It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Thus, "[c]ases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." Hoy, 554 Pa. at 151-152, 720 A.2d at 754 (citing Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970); Banyas v. Lower Bucks Hospital, 293 Pa. Super. 122, 437 A.2d 1236 (1981) and Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979). What's more, in the absence of expert medical confirmation that a plaintiff has actually suffered the claimed emotional distress, such a claim for intentional infliction of emotional distress cannot succeed. Wecht v. PG Publishing Co., 1999 Pa. Super. 28, 725 A.2d 788, 791 (Pa. Super. 1999)(citing Kazatsky, 515 Pa. at 197-99, 527 A.2d at 995); Britt v. Chestnut Hill College, 429 Pa. Super. 263, 272, 632 A.2d 557, 561 (1993).

In this case, there is absolutely no evidence whatsoever that the defendant officers intended to cause the plaintiff any emotional distress. The video and audio recordings of Ms. Gorman's arrest show that the officers were courteous and respectful throughout this event. As previously noted, it was only in response to Plaintiff's increasingly oppositional and

hostile behavior following her failure of the field sobriety testing and being advised that she was placed under arrest, that Corporal Richwine warned her that she would be tased if she didn't cooperate and sit in the back of the police cruiser. Plaintiff responded by inviting the officers to tase her and by continuing to refuse to comply with their requests. While there is no question that being stopped by the police and subsequently arrested for driving under the influence is inordinately stressful and emotionally distressing, we respectfully observe that both her arrest and her subsequent tasing resulted from a series of decisions and behaviors undertaken by the plaintiff herself. Accordingly, we do not find that the plaintiff has any evidence to support her assertion that the individual defendants either acted outrageously or extremely or with the specific intention of causing her emotional distress.

In addition, Plaintiff has not provided the requisite expert medical confirmation that she, in fact, suffered any emotional injury either. For these reasons, we shall grant the motion for summary judgment and enter judgment in favor of the defendants and against the plaintiff on Count IV of the Second Amended Complaint.

2. Misrepresentation and Deceit

In Count V, Plaintiff asserts that in his written police report and in his attestation before a magisterial district

justice Corporal Richwine misrepresented that it was necessary to taser her and that only a single taser stun was delivered to her.

Under Pennsylvania law, a claim for intentional misrepresentation is essentially identical and tantamount to a claim for fraud. See, e.g., Presbyterian Medical Center v. Budd, 2003 Pa. Super. 323, 832 A.2d 1066, 1072 (Pa. Super. 2003)("The essence of fraud is a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it to the damage of its victim."). "Furthermore, 'fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture.'" Rohm and Haas Co. v. Continental Casualty Co., 566 Pa. 464, 781 A.2d 1172, 1179 (2001)(quoting Moser v. DeSetta, 527 Pa. 157, 589 A.2d 679, 682 (1991)); R.W.E. v. A.B.K., 2008 Pa. Super. 253, 961 A.2d 161, 167-168 (Pa. Super. 2008). "In Pennsylvania, fraud-based claims of this sort require proof of the following elements by clear and convincing evidence:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5)justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."

EBC, Inc. v. Clark Building Systems, Inc., 618 F.3d 253, 275 (3d

Cir. 2010)(citing, inter alia, Skurnowicz v. Lucci, 798 A.2d 788, 793 (Pa. Super. 2002); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 225, n. 13 (3d Cir. 2008).

In this matter, we find nothing erroneous or false in the contents of Cpl. Richwine's police report or in the affidavit of probable cause that he presented to the district justice. Consequently, Plaintiff cannot make out a cause of action for misrepresentation. In addition, Plaintiff herself has acknowledged the truth of the statements and representations contained in Cpl. Richwine's report and affidavit – indeed, she pled guilty to the offense with which she was thereby charged. (Defendants' Exhibit "L"; Pl's Dep., at p. 111). Given that Plaintiff has adduced no evidence that she ever withdrew or revoked her guilty plea or that her conviction and sentence were otherwise reversed, set aside or declared invalid, we conclude that Defendant Richwine is entitled to the entry of judgment in his favor as a matter of law. See, e.g., Heck v. Humphrey, 512 U.S. 477, 486-487, 114 S. Ct. 2364, 2372, 129 L. Ed.2d 383 (1994)(holding that claim for damages arising out of conviction or sentence that has not been invalidated is not cognizable under §1983). The motion for summary judgment is therefore granted in favor of defendant and against plaintiff on Count V as well.

3. Assault and Battery

In addition to accusing the individual officer defendants of

the unlawful use of excessive force in the course of arresting her, Plaintiff has also charged Officer Loux individually with assault and battery under Pennsylvania common law in Count III of her Second Amended Complaint.

"Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994)(quoting Cohen v. Lit Brothers, 166 Pa. Super. 206, 209, 70 A.2d 419, 421 (1950)); Brownstein v. Gieda, 649 F. Supp. 2d 368, 375 (M.D. Pa. 2009).  A police officer, however,

> "may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery."

Id.  "Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)(citing Edwards v. City of Philadelphia, 860 F.2d 568, 572 (3d Cir. 1988)); Mills v. City of Harrisburg, 589 F. Supp. 2d 544, 557 (M.D. Pa. 2008).  Moreover, to make out a case for the intentional tort of assault and battery, a plaintiff must also prove that he did not consent to the tortious conduct

because consent vitiates the wrongfulness of the conduct.  Barnes v. American Tobacco Co., 161 F.3d 127, 147-148 (3d Cir. 1998); Schall v. Vazquez, 322 F. Supp. 2d 594, 601-602 (E.D. Pa. 2004).

In application of the foregoing to the case at hand, we re-iterate our earlier finding that the amount of force utilized to place Plaintiff under arrest on November 19, 2008 was only that which was required to obtain compliance and therefore reasonable. Hence, we find that the battery of which Plaintiff complains against Officer Loux was privileged as it occurred within the course and scope of a lawful arrest.  Additionally, as is clear from the audiotape of this incident and the depositions of Cpl. Richwine, Officer Loux and the plaintiff herself, Plaintiff actually invited the police to tase her.  (See, e.g. Pl's Dep., 106).  Consequently, we further find that the wrongfulness of the battery was effectively destroyed in this case by Plaintiff's consent.   Summary judgment is therefore properly entered in favor of Officer Loux on Count III.

In view of all of the foregoing, we see no necessity to consider the issue of qualified immunity as the defendants' motion for summary judgment shall be granted in its entirety.  An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHEALE A. GORMAN | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 10-CV-6760 |
| WARWICK TOWNSHIP, | : | |
| OFFICER EDWARD LOUX, | : | |
| CORPORAL AARON M. RICHWINE | : | |
| and OFFICER BARRY J. SZAMBOTI | : | |

**ORDER**

AND NOW, this 23rd day of April, 2012, upon consideration of Defendants' Motion for Summary Judgment (Doc. No. 27) and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and Summary Judgment is hereby entered in favor of Defendants and against Plaintiff on all of the Counts of the Second Amended Complaint in no amount.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, C.J.